O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

TONI M. REYES,                        )      NO. EDCV 06-1281-CT
                                      )
          Plaintiff,                  )      OPINION AND ORDER
                                      )
          v.                          )
                                      )
MICHAEL J. ASTRUE,                    )
Commissioner of                       )
Social Security,                      )
                                      )
                                      )
          Defendant.                  )
_____       )

     For the reasons set forth below, it is ordered that judgment be
entered in favor of defendant Commissioner of Social Security ("the
Commissioner") because the Commissioner's decision is supported by
substantial evidence and is free from material legal error.

                        SUMMARY OF PROCEEDINGS

     On November 16, 2006, plaintiff, Toni M. Reyes ("plaintiff"), filed
a complaint seeking judicial review of the denial of benefits by the
Commissioner pursuant to the Social Security Act ("the Act").  The
parties filed a consent to proceed before the magistrate judge.  On
May 22, 2007, plaintiff filed a memorandum of points and authorities in
support of plaintiff's complaint.  On June 22, 2007, the Commissioner

filed a memorandum in support of defendant's answer.

SUMMARY OF ADMINISTRATIVE RECORD

1.   Proceedings

On December 28, 2001, plaintiff filed applications for disability insurance and Supplemental Security Income ("SSI") benefits, alleging disability since April 30, 2001 due to cervical cancer and depression. (TR 92-94; 112; 571-73).[1]  The applications were denied initially and upon reconsideration.  (TR 35-44; 574-84).

Plaintiff filed a request for a hearing before an administrative law judge ("ALJ") and on June 10, 2003 and administrative hearing was held.   Plaintiff did not appear at the hearing because she was incarcerated as the result of a perjury conviction.   (TR 587). Plaintiff's attorney and a vocational expert ("VE") appeared and testified before an ALJ. (TR 585-91).  On July 2, 2003, the ALJ issued a decision that plaintiff was not disabled, as defined by the Act, and thus was not eligible for benefits.  (TR 28-34).  On July 31, 2003, plaintiff filed a request with the Social Security Appeals Council to review the ALJ's decision.  (TR 68).

On April 23, 2004, the Appeals Council issued an order remanding the case to an ALJ with directions to offer plaintiff an opportunity for a hearing.  (TR 76-77).

On December 14, 2005, a supplemental administrative hearing was held.  (TR 592-606).  Plaintiff attended the hearing with her attorney and testified.  A vocational expert also testified.  On April 24, 2006,

---

[1]   "TR" refers to the transcript of the record of administrative proceedings in this case and will be followed by the relevant page number(s) of the transcript.

1  an ALJ issued a decision that plaintiff was capable of performing a

2  range of sedentary work, which enabled her to perform jobs that exist in

3  significant numbers in the national economy. (TR 14-20). Plaintiff

4  subsequently sought judicial review of that decision in this court.

5        2.  Summary Of The Evidence

6      The ALJ's April 24, 2006 decision is attached as an exhibit to this

7  opinion and order and, except as otherwise noted, materially summarizes

8  the evidence in the case.

9                    PLAINTIFF'S CONTENTIONS

10     Plaintiff contends as follows:

11  1.  The ALJ failed to properly consider plaintiff's subjective

12      complaints and properly assess plaintiff's credibility; and,

13  2.  The ALJ failed to properly consider all the medical evidence of

14      record, including opinions from treating and consulting physicians.

15                    STANDARD OF REVIEW

16     Under 42 U.S.C. §405(g), this court reviews the Commissioner's

17  decision to determine if: (1) the Commissioner's findings are supported

18  by substantial evidence; and, (2) the Commissioner used proper legal

19  standards. Macri v. Chater, 93 F.3d 540, 543 (9th Cir. 1996).

20  Substantial evidence means "more than a mere scintilla," Richardson v.

21  Perales, 402 U.S. 389, 401 (1971), but less than a preponderance.

22  Sandgathe v. Chater, 108 F.3d 978, 980 (9th Cir. 1997).

23     When the evidence can reasonably support either affirming or

24  reversing the Commissioner's conclusion, however, the Court may not

25  substitute its judgment for that of the Commissioner. Flaten v.

26  Secretary of Health and Human Services, 44 F.3d 1453, 1457 (9th Cir.

27  1995). The court has the authority to affirm, modify, or reverse the

28

3

1  Commissioner's decision "with or without remanding the cause for
2  rehearing." 42 U.S.C. §405(g).  Remand is appropriate where additional
3  proceedings would remedy defects in the Commissioner's decision.
4  McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989).

5                              DISCUSSION

6      1.   The Sequential Evaluation

7      A person is "disabled" for the purpose of receiving social security
8  benefits if he or she is unable to "engage in any substantial gainful
9  activity by reason of any medically determinable physical or mental
10 impairment which can be expected to result in death or which has lasted
11 or can be expected to last for a continuous period of not less than 12
12 months." 42 U.S.C. §423(d)(1)(A).

13     The Commissioner has established a five-step sequential evaluation
14 for determining whether a person is disabled.  First, it is determined
15 whether the person is engaged in "substantial gainful activity."  If so,
16 benefits are denied.

17     Second, if the person is not so engaged, it is determined whether
18 the person has a medically severe impairment or combination of
19 impairments.   If the person does not have a severe impairment or
20 combination of impairments, benefits are denied.

21     Third, if the person has a severe impairment, it is determined
22 whether the impairment meets or equals one of a number of "listed
23 impairments." If the impairment meets or equals a "listed impairment,"
24 the person is conclusively presumed to be disabled.

25     Fourth, if the impairment does not meet or equal a "listed
26 impairment," it is determined whether the impairment prevents the person
27 from performing past relevant work.   If the person can perform past

28                              4

1   relevant work, benefits are denied.

2       Fifth, if the person cannot perform past relevant work, the burden

3   shifts to the Commissioner to show that the person is able to perform

4   other kinds of work.  The person is entitled to benefits only if the

5   person is unable to perform other work.  20 C.F.R. §§404.1520, 416.920;

6   Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987).

7       A.   Credibility Assessment

8       Plaintiff, who could not attend her previous hearing because she

9   was incarcerated as a result of what plaintiff admitted was a perjury

10  conviction, (TR 587, 603),[2] contends that the ALJ failed to properly

11  assess her credibility.

12      To reject a plaintiff's subjective complaints, the ALJ "must

13  provide cogent reasons for the disbelief." Greger v. Barnhart, 464 F.3d

14  968, 972 (9th Cir. 2006)(quoting Lester v. Chater, 81 F.3d 821, 834 (9th

15  Cir. 1995)).  In the absence of evidence of malingering, the ALJ's

16  reasons for rejecting plaintiff's testimony "must be clear and

17  convincing." Id. (quoting Swenson v. Sullivan, 876 F.2d 683, 687 (9th

18  Cir. 1989)).  Moreover, when an ALJ "finds that a [plaintiff's]

19  testimony relating to the intensity of his pain and other limitations is

20  unreliable, the ALJ must make a credibility determination citing the

21  reasons why the testimony is unpersuasive." Morgan v. Comm'r of Soc.

22  Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999)(citation omitted).  In

23  making a credibility determination the ALJ "must specifically identify

24

25      [2]Plaintiff also reported to Dr. Romualdo Rodriguez, the
26  psychiatrist who examined her consultatively on July 6, 2004,
    that she had been arrested at least twice, and that her most
27  recent arrest at that time was in 2003 for perjury and theft,
    which involved identity theft.  (TR 285).

28

1  what testimony is credible and what testimony undermines the

2  [plaintiff's] complaints.  In this regard, questions of credibility and

3  resolution of conflicts in the testimony are functions solely of the

4  Secretary."  Id. (Citations omitted).

5      In assessing plaintiff's credibility, the ALJ may use "ordinary

6  techniques of credibility evaluation," such as considering plaintiff's

7  reputation for truthfulness and any inconsistent statements in

8  plaintiff's testimony.  Tonapetyan v. Halter, 242 F.3d 1144, 1148 (9th

9  Cir. 2001)(citation omitted).  Additionally, the ALJ may consider a

10  number of other factors:

11      1. The nature, location, onset, duration, frequency,
       radiation, and intensity of any pain; 2. Precipitating and
12      aggravating factors (e.g., movement, activity, environmental
       conditions); 3. Type, dosage, effectiveness, and adverse
13      side-effects of any pain medication; 4. Treatment, other than
       medication, for relief of pain; 5. Functional restrictions;
14      and 6. The [plaintiff's] daily activities.

15  Burch v. Barnhart, 400 F.3d 676, 680 (9th Cir. 2005), citing Bunnell v.

16  Sullivan, 947 F.2d 341, 346 (9th Cir.1991).

17      The ALJ met these requirements here.  The ALJ found that although

18  plaintiff's medically determinable impairments reasonably could be

19  expected to produce the alleged symptoms, "her statements concerning the

20  intensity, duration and limiting effects of the symptoms are not

21  entirely credible." (TR 17).  He gave several reasons for this finding.

22      First, the ALJ noted plaintiff's perjury conviction (TR 18), which

23  is a proper basis for questioning her credibility.  See Burch v.

24  Barnhart, 400 F.3d at 680 (plaintiff's reputation for truthfulness

25  properly considered in credibility analysis).

26      The ALJ also pointed out the inconsistency between plaintiff's

27  alleged disabling impairments and her activities of daily living, which

28

6

Case 5:06-cv-01281-CT   Document 20   Filed 09/27/07   Page 7 of 15   Page ID #:59

1  include raising four children with no assistance from their fathers.

2  (TR 18, 315, 317, 320).  See Rollins v. Massanari, 261 F.3d 853, 586-87

3  (9th Cir. 2001)(finding that ALJ properly found that plaintiff's claim

4  to have totally disabling pain was undermined by her daily activities

5  which including attending to the needs of her young children with no

6  help from her ex husband).

7       The ALJ also noted that plaintiff was not undergoing treatment from

8  a psychologist or psychiatrist despite her claims of disabling

9  depression.  (TR 17-18).  Burch, 400 F.3d at 681 (ALJ properly

10  discredited plaintiff's claims of disabling pain and depression based on

11  lack of aggressive treatment).  In fact, psychiatrist Reynaldo Abejuela,

12  who examined plaintiff consultatively on September 30, 2005, reported

13  that plaintiff spent a significant portion of the time during the exam

14  asking questions about how she could get benefits, said that "she feels

15  sad off and on because Social Security is taking a long time to give her

16  benefits," that the reason she is depressed is because "Social Security

17  is taking a long time to give her some help," and that "my doctor makes

18  me depressed because he always tells Social Security I can work." (TR

19  315, 320).

20       The ALJ's assessment of plaintiff's credibility and consideration

21  of her subjective complaints was free from material legal error and

22  supported by substantial evidence.

23       B.   Medical Evidence

24       Plaintiff contends that the ALJ improperly based his in

25  determination of plaintiff's residual functional capacity ("RFC")

26  "almost entirely" on the assessment of Dr. Adi Klein, M.D., who

27  conducted an internal medicine consultative examination of plaintiff on

28

October 1, 2005. (TR 325-331). Plaintiff contends that this examination does not constitute substantial evidence supporting the ALJ's assessment. She also asserts that the ALJ failed to properly consider the opinions of Dr. Divy Kikani, who conducted a psychiatric consultative examination of plaintiff on February 28, 2002 (TR 202-205), and Dr. Elmer Symonett, plaintiff's treating physician. (TR 359-62).

The ALJ must base a residual functional capacity ("RFC") assessment on all of the relevant medical and other evidence of record, including the opinions of treating physicians and physicians who examine the plaintiff consultatively for the Commissioner. See 20 C.F.R. §§ 404.1545; 416.945. However, it is the responsibility of the ALJ, not a physician, to determine residual functional capacity. See 20 C.F.R. §§ 404.1527(e)(2), 416.927(e)(2); Vertigan v. Halter, 260 F.3d 1044, 1049 (9th Cir. 2001). In addition, the ALJ is responsible for determining credibility, resolving conflicts in the medical testimony and ambiguities in the evidence and where the evidence is susceptible to more than one rational interpretation, it must be upheld. Andrews v. Shalala, 53 F.3d 1035, 1039-40 (9th Cir. 1995)(citation omitted). See also Johnson v. Shalala, 60 F.3d 1428, 1434 (9th Cir. 1995)(the reviewing court will not reverse an ALJ's conclusions about contradictory or ambiguous evidence).

In this case, plaintiff was examined consultatively concerning her physical complaints on three separate occasions. None of the consultative examiners opined that plaintiff had limitations that would preclude her from all work. (TR 219-23; 277-81; 325-331). The most restrictive assessment of her functional limitations was given by Dr. Adi, a board certified internal medicine specialist who examined

plaintiff on October 1, 2005.  The examination was essentially normal with the exception of lymphedema in the left leg and limited range of motion in the back and minor strength reduction in the hand due to pain reported by plaintiff.  Dr. Adi found that plaintiff was limited to lifting and carrying 10 lbs occasionally and frequently, walking or standing for two hours and sitting for six hours in an eight hour workday, with appropriate breaks.  (TR 330).

In assessing plaintiff's RFC, the ALJ reviewed and considered all the record evidence, including plaintiff's medical records and the findings of the consultative examiners.  (See TR 17).  The ALJ's restrictive RFC assessment is supported by the findings of Dr. Adi and is more restrictive than the assessments by the previous consultative examiners and the state agency physicians.  Dr. Adi's assessment is consistent with his clinical findings and the overall medical evidence and, therefore, constitutes substantial evidence supporting the ALJ's decision.  See  Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002)("The opinions of non-treating or non-examining physicians may also serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record.").

For example, plaintiff's January 2005 magnetic resonance imaging studies ("MRI") showed mild degenerative changes of the intervertebral discs in the lumbar spine, which was noted by Dr. Adi in his examination and assessment.  (TR 356).  Discography with CT scans showed severe disc derangement and a tear, but no abnormalities of the thecal sac or neural foramina.  (TR 383).  However, as the ALJ noted in reviewing the evidence relating to plaintiff's alleged back pain, Dr. Adi's examination, which occurred only a month before the discography of

plaintiff's lumber region, revealed that although plaintiff had a diminished range of motion in her back due to complaints of pain, she had no signs of radiculopathy, her gait was normal, her squatting and rising was within normal limits, she required no assistive aid while walking and she was able to change position and get on and off the table without difficulty. (TR 16-17, 329-30). Dr. Adi limited plaintiff to essentially sedentary work. (TR 330). See 20 C.F.R. §§ 404.1567(a), 416.967(a). The ALJ gave plaintiff a slightly more restrictive assessment, limiting her to sedentary work with only occasional climbing, stooping, kneeling, crouching or crawling. (TR 17). The record contains no opinions of any treating physicians that plaintiff is disabled by her back condition.

Similarly, while the record shows that plaintiff has lymphedema of the left lower extremity, which the ALJ found was a severe impairment, the ALJ noted that this condition had not caused muscular or acute skin changes and has not always been noted in her medical records. (See, e.g., TR 18, 357 (noting edema of left leg, but plaintiff denied any sharp shooting pain in leg); 414 (no pedal edema); 454 (noting chronic mild edema with no acute changes of skin, edema, musculature or nerve pathways); 488 (no edema in extremities)). Plaintiff's lymphedema was specifically noted by Dr. Adi and considered in his restrictive assessment of her physical limitations. (TR 330).

Plaintiff does have a history of cervical cancer, which resulted in a hysterectomy in 2001. (TR 179-84). However, as the ALJ observed, there is no evidence that the cancer has recurred. (See TR 507(noting no signs of metastases in 2004)). In addition, the ALJ noted that plaintiff had left kidney atrophy and placement of urethral stents, but

1    that the 2005 lab results showed overall normal kidney function.   (<u>See</u>
2    TR 17, 413-14).

3        Despite the evidence supporting the ALJ's assessment, plaintiff
4    nonetheless contends that the ALJ erred by failing to properly consider
5    the opinions of plaintiff's treating physician, Dr. Symonett, that
6    plaintiff is disabled.   Dr. Symonett filled out three checklist
7    disability forms in July of 2003, June of 2004, and August of 2005.   In
8    2003, Dr. Symonett indicated that plaintiff was status post cervical
9    cancer and indicated that she would be unable to work from August 25,
10   2003 to January 15, 2004 due to radiation therapy and a swollen leg.
11   (TR 360).   In June of 2004 he stated that plaintiff was post cervical
12   cancer and had lymphedema and appropriate treatment was "Prozac,
13   stockings."   (TR 362).   Finally, in August 2005, he stated that
14   plaintiff could not work, had depression and lymphedema and that there
15   was no treatment.   (TR 359).

16       A treating physician's opinion is generally entitled to greater
17   weight than that of an examining physician.   <u>Andrews v. Shalala</u>, 53 F.3d
18   1035, 1041 (9th Cir. 1995) (citation omitted).   However, a physician's
19   opinion is not necessarily conclusive as to either a physical condition
20   or the ultimate issue of disability.   <u>Andrews v. Shalala</u>, 53 F.3d at
21   1041 (citation omitted).   The weight given a medical opinion depends on
22   whether it is supported by sufficient medical data and is consistent
23   with other evidence in the record.   20 C.F.R. §§ 404.1527; 416.927.

24       The ALJ may disregard the treating or examining physician's opinion
25   whether or not that opinion is contradicted.   <u>Andrews v. Shalala</u>, 53
26   F.3d at 1041 (citation omitted); <u>Lester v. Chater</u>, 81 F.3d 821, 830-31
27   (9th Cir. 1996).   However, even if the opinions of such physicians are

28

contradicted by other doctors, the Commissioner may not reject those opinions without providing "specific and legitimate reasons" for doing so that are supported by substantial evidence. Rollins v. Massanari, 261 F.3d at 856 (citation omitted); Lester v. Chater, 81 F.3d at 830-31.

Here, the ALJ accorded the opinions of Dr. Adi greater weight that the one page checklist forms filled out by Dr. Symonett for a number of reasons. Specifically, the ALJ found that Dr. Symonett's opinion that plaintiff's lymphedema was disabling was not supported by the treatment records, which showed, as discussed above, that the lymphedema was reported only intermittently. (See TR 18, 357, 414, 454, 488). "[A]n ALJ may discredit treating physicians' opinions that are conclusory, brief, and unsupported by the record as a whole," or "by objective medical findings." Batson v. Commissioner of the Social Security Administration, 359 F.3d 1190, 1195 (9th Cir. 2004).

In addition, the ALJ found that Dr. Symonett gave "undue weight" to plaintiff's claims of depression and that more weight should be given to the findings of the board certified psychiatrist, Dr. Reynaldo Abejuela, who found, after giving plaintiff a full mental status examination in 2005, that plaintiff had, at most, only a mild problem. (TR 321-23). See also TR 289 (2004 consultative psychiatric examination by psychiatrist Romualdo Rodriguez, M.D., finding that plaintiff has no functional mental limitations). The ALJ may properly consider a physician's specialization in determining the weight to give that physician's opinion. See 20 C.F.R. §§ 404.1527(d)(5); 416.927(d)(5)("We generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a

source who is not a specialist.")  In addition, where, as here, the ALJ properly found plaintiff not fully credible, the ALJ may discount a physician's opinion based on plaintiff's subjective reporting.  See Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001)(holding that ALJ was free to disregard examining physician's opinion premised on plaintiff's subjective complaints and testing within plaintiff's control where the ALJ had properly discounted plaintiff's credibility).  There is no indication in the record that Dr. Symonett's finding that plaintiff's depression is disabling is based on anything other than plaintiff's subjective reports.

Plaintiff also contends that the ALJ failed to address the findings of Dr. Kikani, the psychiatrist who examined plaintiff consultatively in 2002.  Contrary to plaintiff's contention, however, the ALJ specifically considered the findings of Dr. Kikani and discussed them in his prior decision, which he expressly incorporated by reference into his current 2006 decision.  (TR 14, 30).  Dr. Kikani found that plaintiff was mildly to moderately limited due to her psychological condition, but that she was able to perform simple, repetitive tasks and that her concentration, persistence and pace were not impaired.  (TR 30, 204).   In the ALJ's July 2003 decision, he found, based on the State Agency psychiatrists' findings, which were consistent with Dr. Kikani's findings (TR 211-214), that plaintiff could perform simple repetitive tasks and interact appropriately with co-workers and supervisors, if not the public.  (TR 33).

Since that decision, plaintiff was consultatively examined twice by psychiatrists and neither found that her psychological condition caused any more than a to mild impairment in work-related functioning.  (TR

13

283-89 (finding no mental functional limitations); 314-23 (finding psychiatric limitations ranging from none to mild).  As the ALJ noted, in plaintiff's most recent examination by Dr. Abejuela, she reported that she had not been hospitalized for psychiatric conditions and was not receiving any psychological treatment and was not taking the psychiatric medication apparently prescribed by her doctor.  (TR 17, 315, 320).  Accordingly, given this new information, which showed a lack of longitudinal treatment and plaintiff's apparent failure to take her medication, the ALJ concluded that the finding of a medically determinable mental impairment was questionable.  (TR 17).  Nonetheless, the ALJ limited her to performing "basic mental work related [functions] on a full time basis as well as more complex work-related activities on at least an occasional basis."  (Id.)   The ALJ was not required to adopt Dr. Kikani's or any other doctor's functional assessment, see Vertigan v. Halter, 260 F.3d at 1049, and the ALJ properly weighed Dr. Kikani's prior assessment and the current assessment, and the fact that plaintiff had not sought treatment or taken the medications prescribed by her doctor, in determining that plaintiff could perform basic, and occasionally more complex, work.  See Morgan v. Commissioner of Soc. Sec. Admin., 169 F.3d 595, 600-01 (9th Cir. 1999)(ALJ can meet his burden of properly considering, weighing and crediting or discrediting treating and examining doctors' opinions by "setting out a detailed and thorough summary of the facts and conflicting medical evidence, stating his interpretations thereof, and making findings.")

     The ALJ's consideration of the medical evidence was free from material legal error and supported by substantial evidence.

CONCLUSION

1    Plaintiff clearly has severe impairments.  However, a plaintiff who

2 can still perform work in the national economy, even with a severe

3 impairment, is not disabled as that term is defined by the Act.   See

4 generally Baxter v. Sullivan, 923 F.2d 1391, 1395 (9th Cir. 1991).

5 Furthermore, if the evidence can reasonably support either affirming or

6 reversing the Commissioner's conclusion, the court may not substitute

7 its judgment for that of the Commissioner.   Flaten v. Secretary of

8 Health and Human Services, 44 F.3d at 1457.

9    After careful consideration of the record as a whole, the

10 magistrate judge concludes that the Commissioner's decision is supported

11 by substantial evidence and is free from material legal error.

12 Accordingly, it is ordered that judgment be entered in favor of the

13 Commissioner.

14

15 DATED: September 27, 2007        CAROLYN TURCHIN

16                                 CAROLYN TURCHIN
                                   UNITED STATES MAGISTRATE JUDGE

17

18

19

20

21

22

23

24

25

26

27

28
                                    15